**In re 207 MONTGOMERY STREET, INC., Debtor.**

**207 MONTGOMERY STREET, INC., Plaintiff,**

**v.**

**UNION BANK AND TRUST COMPANY, Defendant.**

**Bankruptcy No. 92–02822–APG.**

**Adv. No. 92–00200–APG.**

United States Bankruptcy Court, M.D. Alabama.

Dec. 23, 1992.

John P. Whittington, Patrick Darby, Bradley, Arant, Rose & White, Birmingham, AL, for plaintiff.

Robert W. Bradford Jr., Mark A. Franco, Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, AL, for defendant.

## OPINION ON COMPLAINT TO DETERMINE VALIDITY, PRIORITY, OR EXTENT OF LIEN OR OTHER INTEREST IN PROPERTY AND FOR DECLARATORY JUDGMENT

A. POPE GORDON, Bankruptcy Judge.

The debtor 207 Montgomery Street, Inc. filed a complaint to determine the respective interests of the debtor and Union Bank and Trust Company in the Bell Building, a downtown twelve-story office building located at 207 Montgomery Street, Montgomery, Alabama. Union Bank holds a mortgage on the building.[1]

The debtor currently occupies the building under an instrument designated "Lease Agreement" executed in 1984 by Bell Building Associates, the debtor's predecessor-in-interest, and the Lower Commerce Street Historical Preservation Authority, an Alabama public corporation.[2]

The debtor contends that the lease is in substance a disguised security arrangement and requests the court to construe the "Lease Agreement" as a sale and mortgage.[3]

Union Bank contends that the lease is an unexpired lease which the debtor must assume or reject under 11 U.S.C. § 365.[4]

The Authority purchased and renovated the Bell Building in 1984 with $1,700,000 borrowed from Union Bank & Trust Company.[5] The Authority gave Union Bank a promissory note secured by a mortgage on the building.

The Authority entered into the lease agreement with Bell Building Associates. The Authority assigned the rents and its interest in the lease agreement to Union Bank as further security for the loan. In addition, the partners in Bell Building Associates personally guaranteed the note to Union Bank.[6]

The lease is a 216–month net lease.[7] The agreement contains an option for the lessee to purchase the building for $7,000 upon payment of the rent due. The rent payments in amount and timing are exactly equal to the monthly installments ($18,105.90) currently due on the Union Bank note. The debtor contends that the lease agreement is in substance a disguised security arrangement. The debtor recharacterizes the three-party transaction as follows:

> In order to issue the tax-free Note to Union Bank, the Authority took title to the Bell Building and sold the Bell Building to BBA [Bell Building Associates]. To secure repayment of its own obligations under the Note, the Authority took back a mortgage from BBA in the form of the Lease. By assigning the Lease to Union Bank, the Authority removed itself as an intervening

---

1. This is a core proceeding under 27 U.S.C. § 157(b)(2)(K). These conclusions of law are made pursuant to Fed.R.Bankr.P. 7052. The facts are not substantially in dispute. The parties submitted the case on affidavits, briefs, and arguments of counsel.

2. The Lower Commerce Street Historical Preservation Authority is not a party to this adversary proceeding.

3. The debtor's interest in the lease agreement is the debtor's primary asset. Construing the lease agreement as a mortgage would give the debtor the advantage of proposing a reorganization plan at variance with the terms of the lease.

4. 11 U.S.C. § 365(a) provides in pertinent part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

5. The bank loaned the Authority the entire $1,300,000 purchase price and an additional $400,000 for building renovations. See Debtor's Memorandum of Law at 3, note 1.

6. Bell Building Associates operated the Bell Building until 1989 when it assigned its interest under the lease agreement to Bell Building Limited, Inc., a New York corporation.

Bell Building Limited executed a mortgage as security for the assignment. In January 1992, Bell Building Limited defaulted in the payments on the mortgage note to Union Bank.

Union Bank accelerated the indebtedness under the note and filed suit against Bell Building Associates and the individual guarantors to collect the unpaid balance of approximately $1,500,000.

On May 7, 1992 Bell Building Associates foreclosed the mortgage from Bell Building Limited.

The debtor corporation purchased Bell Building Limited's interest at the foreclosure sale. The stock of the debtor corporation is owned by two of the Bell Building Associates partners who guaranteed the Union Bank note.

7. A net lease is a lease "in which provision is made for the lessee to pay, in addition to rent, such additional expenses as the taxes, insurance and maintenance charges." Black's Law Dictionary 1040 (6th ed. 1990).

party between Union Bank and BBA. BBA assumed the Authority's obligations to Union Bank under the Note and the Mortgage.

*Debtor's Memorandum of Law* at 20.[8]

■ The debtor asserts that (1) the parties involved the Authority only as a conduit to confer favorable tax treatment on the transaction;[9] (2) the economic realities of the transaction reflect that the lease is not a true lease; and (3) *In re Martin Brothers Toolmakers, Inc.*, 796 F.2d 1435 (11th Cir. 1986) is not applicable to this case.

Union Bank contends that *In re Martin Brothers Toolmakers, Inc.*, 796 F.2d 1435 (11th Cir.1986) requires rejection of the debtor's arguments.[10] The court agrees.

The Authority is not a mere conduit in this three-party transaction. This public corporation was created to perform the significant public function of preservation of historical property by "restoring, renovating, preserving, improving, protecting or maintaining any public or private property within the state that has been listed in the National Register of Historic Places...."

The Authority performs these roles by purchasing and restoring historical property which it may "lease, sell and otherwise dispose of" to others. *Ala.Code* § 41–10–137 et seq. (1975).

The Authority may issue promissory notes and bonds in support of its legitimate purposes by securing the notes and bonds with a mortgage on its real property. *Ala.Code* §§ 41–10–142, 143, 144 (1975).

The Authority is able to lease property and borrow money for less than market value because its real property is exempt from ad valorem state taxation and the income from its notes and bonds is exempt from state taxation. *Ala.Code* § 41–10–147 (1975). The income from its notes and bonds is also nontaxable under specified conditions under the Internal Revenue Code, 26 U.S.C. § 103.[11]

Therefore the Authority as property owner[12] and nonprofit corporation[13] passes on to a lessee and lender such savings as annual property taxes, sales taxes (on its purchases for renovation), and lower interest rates on borrowed money.[14]

For eight years Bell Building Associates as lessee and Union Bank as mortgagee have enjoyed substantial benefits from the involvement of the Authority in the transaction. The debtor currently enjoys these benefits under its interest in the lease agreement.

Therefore, the Authority cannot be dismissed as a mere straw party to the three-

---

**8.** *See* debtor's *Reply to Memorandum Brief of Union Bank* at 3 in which the debtor elucidates its argument that the lease constitutes a mortgage to Union Bank:

Union Bank further seems to be under the misapprehension that the Debtor wishes the Court to construe the Lease, the Mortgage, and the Note as a single document. To the contrary, the Debtor is not arguing that the Lease somehow merged into the Mortgage, which runs between the Authority and Union Bank. Rather, the Debtor's argument is that the Lease, in and of itself, is a mortgage that ran between BBA [Bell Building Associates] and the Authority and that now, due to various assignments and foreclosures, runs between the Debtor and Union Bank. The Debtor's argument, as set forth in the Memorandum, does not rely on the Debtor being regarded as a party to the Mortgage. The Debtor freely admits that it is not a party to the Mortgage. Rather, Debtor argues that the Lease is a mortgage. As a party to the Lease, the Debtor is a party to its own mortgage with Union Bank.

The court notes that the debtor's "mortgage" to the Bank would be superfluous in light of the mortgage already held by the Bank from the Authority.

**9.** The debtor also contends that under applicable Internal Revenue Service reporting require-

ments, the debtor is required to treat the lease as a purchase of the Bell Building for federal tax purposes.

**10.** Union Bank also argues that the Historical Preservation Authority is a necessary and indispensable party in this proceeding. The rights of the Authority are not prejudiced by this decision.

**11.** The interest rate on the note to Union Bank increases from 11% to 14% if the Federal tax exemption is lost. The lease provides for the payment of additional rent if the exemption is lost. *See* § 6.06(e).

**12.** As in *Martin*, the Authority also has other rights and duties indicative of ownership. Under the lease, the Authority owes the debtor a duty of quiet enjoyment of the property and has the right to re-enter the property upon default. As mortgagor, the Authority possesses the equity of redemption and the statutory right of redemption upon foreclosure.

**13.** *Ala.Code* § 41–10–152 (1975).

**14.** The tax exemptions effectively lower the debtor's rent. The rent is tied to the mortgage interest rate. The interest rate would be increased by

party transaction.[15] To do so would be to "slight, and possibly harm, its vital public function." *Martin,* 796 F.2d at 1440. The Authority, as owner of the property, possesses rights which significantly enhance the ability of the Authority to carry out its vital public function.[16] Recharacterizing the Authority as a seller of the property could limit the Authority's ability to oversee the continuing preservation of the building during the term of the lease.

The debtor's argument that restoration of the building terminates the Authority's public function overlooks the continuing public function of *preservation* of historical property. Under the lease, the lessee agreed to maintain the Bell Building and make only those additions or alterations which will not "substantially reduce its value or change its character" as a historical structure.[17] Failure to carry out this agreement during the term of the lease is an event of default for which eviction may ensue.

The debtor also contends that the economic realities of the transaction reflect that the lease is not a true lease. In support of the argument, the debtor asserts as follows: (1) the rent is merely repayment of the bank loan; (2) the option to purchase upon retirement of the note is for nominal consideration; and (3) the debtor assumed lease obligations characteristic of ownership—responsibility for maintenance, taxes and insurance as well as the right to assign the lease without the lessor's consent. *See In re PCH Associates,*

804 F.2d 193 (2d Cir.1986). However, indicia of ownership also resides in the Authority.[18]

■ Arguments regarding the economics of the transaction are not controlling in determining whether an instrument is a lease for purposes of 11 U.S.C. § 365. *See In re Martin Brothers Toolmakers, Inc.,* 796 F.2d 1435, 1440 (11th Cir.1986) where the court rejected the "Bankruptcy Code's pragmatic perspective" under the facts of that case. *But see PCH Associates,* 804 F.2d at 198. To the extent that *PCH Associates* holds otherwise, *PCH Associates* conflicts with *Martin.* *PCH Associates* involved a three-party transaction unaffected by the public interest at stake in *Martin.*[19]

The tax consequences of the transaction will be changed by construing the lease as a completed sale and mortgage. The debtor concedes that only the Authority as owner is exempt from state ad valorem taxation. Therefore, the lessee has not paid ad valorem taxes for which it is liable should the transaction be construed as a sale to the lessee. Other tax benefits may be lost as well.[20]

To hold that the lease is a mortgage would not only jeopardize tax exemptions relied on by this debtor and this bank, but could also jeopardize similar transactions[21] and raise the future costs of borrowing to restore and preserve historical property.

*Martin* requires judgment in favor of the defendant. A separate order in consonance with this opinion will enter.

3% if the tax exemption is lost. *See* note 11. According to the affidavit by Union Bank's accountant, the interest rate is about 2% below the 1984 prime interest rate. In addition, the lessee has received tax savings of $2,500 on mortgage and deed tax and recording fees, approximately $196,600 on ad valorem taxes over the life of the lease including renewals, and 6% to 8% of the costs of renovation materials on sales tax. The original $1,700,000 bank loan to the Authority included $400,000 for renovation of the building. The bank later made a $200,000 loan for subsequent renovation. Some of these loan funds were used to buy materials. *See* Bill Barranco affidavit.

15. Indeed, the lease contemplated the Authority's continuing liability under the note to Union Bank. Section 10.08 of the lease provides:
The Lessee shall not be deemed to be a party to the Mortgage between the Authority and the Mortgagee, and reference in this Lease Agreement to said Mortgage shall not impose any

liability or obligation upon the Lessee other than its specific obligations and liabilities undertaken in this Lease Agreement.

16. *See supra* note 12.

17. *See Lease,* Article IV.

18. *See supra* note 12.

19. The court notes, however, that economically this lease is not unduly burdensome to this estate because the lease payments are guaranteed by the stockholders.

20. *See supra* note 14.

21. The Authority has made approximately $44,-000,000 available for restoration, improvement, and preservation of the buildings in Montgomery, Alabama listed on the National Register of Historic Places. *See* J. Theodore Jackson, Jr. affidavit.

ORDER ON COMPLAINT TO DETER-
MINE VALIDITY, PRIORITY, OR
EXTENT OF LIEN OR OTHER IN-
TEREST IN PROPERTY AND FOR
DECLARATORY JUDGMENT

In accordance with the Opinion entered this day, it is hereby

ORDERED that the Lease Agreement executed in December 1984 Between The Lower Commerce Street Historical Preservation Authority and Bell Building Associates, the debtor's predecessor-in-interest, is a lease subject to rejection or assumption under 11 U.S.C. § 365.